IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA  DIVISION

RENEE S. WILLIAMS, as Trustee of the
Estate of Clemens Eugene Soeller, M.D.
and Kandy Ann Soeller                                                                    PLAINTIFF

v.                                              Case No. 4:11-CV-04007

STATE VOLUNTEER MUTUAL
INSURANCE COMPANY                                                                DEFENDANT

## MEMORANDUM OPINION AND ORDER

Currently before the Court are Defendant State Volunteer Mutual Insurance Company's ("State Volunteer") Motion to Dismiss (Doc. 5), Plaintiff Renee S. Williams' Response (Doc. 13), and State Volunteer's Reply (Doc. 15).  Also before the Court are Williams' Motion for Leave to File Amended Complaint (Doc. 16), State Volunteer's Response (Doc. 17), and Williams' Reply (Doc. 18). For the reasons set forth below, State Volunteer's Motion to Dismiss is GRANTED, and Williams' Motion to Amend Complaint is DENIED.

### I. Background

On April 13, 2005, Dr. Clemens Eugene Soeller, an orthopedic surgeon, purchased a professional liability policy issued by State Volunteer ("the Policy" or "the Contract"). The "Named Insured" under the policy is Dr. Soeller.  Dr. Soeller complied with the Contract by paying a premium and in return received $1,000,000 in liability coverage per incident and $3,000,000 in the aggregate each year. The Policy covered claims made during the May 21, 2005 through May 21, 2006 policy period. On August 19,  2005, Dr. Soeller and his wife filed for Chapter 7 bankruptcy. Plaintiff Renee S. Williams was appointed as trustee of the estate. On May 4, 2005, prior to filing for bankruptcy, Dr. Soeller performed surgery on Sally Johnson. On May 16, 2006, Ms. Johnson

sued Dr. Soeller in Hempstead County Circuit Court, alleging medical negligence. Pursuant to the terms of the Policy, State Volunteer paid for counsel to defend Dr. Soeller. On December 4, 2008, the Bankruptcy Court issued an Order granting Johnson relief from the bankruptcy stay so that she could pursue her state court litigation.

Williams alleges that on at least one occasion prior to Johnson obtaining a judgment against Dr. Soeller, counsel for Johnson conveyed an offer to settle all Johnson's claims to Dr. Soeller's counsel for an amount that was within the limits of the Policy. The claim, however, was not settled. In January of 2010, following a jury trial, Johnson obtained a judgment against Dr. Soeller in the amount of five million dollars. The four million dollars in excess of the one million dollar Policy limit became an unsecured claim against the Soellers' bankruptcy estate. Williams alleges that State Volunteer breached the insurance contract and negligently failed to settle the medical malpractice claim against Dr. Soeller, resulting in an "excess judgment" with which Dr. Soeller's estate is now burdened.

## II. Motion to Dismiss

In ruling on a 12(b)(6) motion to dismiss, the Court accepts as true all of the factual allegations contained in a complaint and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008); *see also Whitehead v. Delta Beverage Group, Inc.*, 2006 U.S. Dist. LEXIS 93493 (W.D. Ark. 2006). All reasonable inferences from the complaint must be drawn in favor of the non-moving party. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004). Complaints should be liberally construed in the plaintiff's favor and "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in

support of [her]  claim[s] which would entitle [her] to relief." *Rucci v. City of Pacific*, 327 F.3d 651, 652 (8th Cir. 2003)(quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

Rule 8(a)(2), which applies to claims for relief, requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2009) and *Ashcroft v. Iqbal*, ____U.S.____, 129 S.Ct. 1937 (2009), the Supreme Court established a heightened pleading standard, stating that "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949.  Additionally, pleadings that contain mere "labels and conclusions" or "a formulaic recitation of the elements of the cause of action will not do."  *Twombly*, 550 U.S. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S.Ct. at 1949.

### A. Breach of Contract

Williams did not provide a copy of the insurance policy at issue to the Court with her original Complaint. Although Williams should have been able to obtain a copy of the Policy before filing her Complaint, Williams claims she did not receive a copy of the Policy from State Volunteer until after her Complaint was filed. It seems, therefore, that Williams made her claim for breach of contract without being fully aware of what the terms of the contract actually were. While Williams now moves to amend her complaint to clarify certain issues and to include the Policy in question, the Court finds, as discussed below, that the proposed amendment would not cure the legal deficiencies present in Williams' Complaint.

With respect to settlement of claims, the Policy provides in relevant part:

[T]he Company shall have the right and duty to:

(a)  defend any suit, for which this insurance applies, against the insured seeking damages, even if any of the allegations are groundless, false or fraudulent;

(b)  select defense counsel; and

(c)  make such investigation and settlement of any medical incident that it deems expedient, provided that no settlement will be made without the insured's consent.

(Doc. 6-1, p. 2). Although Williams did not provide the Court with a copy of the Contract, Defendants have made the Contract a part of the record, and the Court may consider it as Williams relied on it in bringing her claims. *See M.M. Silta, Inc. v. Cleveland Cliffs, Inc.*, 616 F.3d 872, 876 (8th Cir. 2010) ("Where, as here, the claims relate to a written contract that is part of the record in the case, we consider the language of the contract when reviewing the sufficiency of the complaint"); *Moses.com Sec., Inc. v. Comprehensive Software Sys.*, 406 F.3d 1052, 1066 at n.3 (8th Cir. 2005) (finding that consideration of a document which was not expressly a part of the pleadings was appropriate where the complaint specifically referred to the document as a basis for an alleged claim). Under Arkansas law, "[t]he language in an insurance policy is to be construed in its plain, ordinary, popular sense." *Norris v. State Farm Fire & Cas. Co.*, 341 Ark. 360, 363 (Ark. 2000). The Court finds that the Policy at issue herein is unambiguous, and the Court accordingly reviews Williams' claims under the plain language of the Policy.

Williams does not allege that she took any action to seek to become involved in the defense of the state court case, even though she had notice of the pendency of the litigation. It seems that Williams' allegation is not that she sought and was denied information about a settlement offer made by Johnson, but rather Williams alleges that State Volunteer was obligated to inform her, as the Trustee of the Soellers' estate, of any settlement offers and to allow her to ultimately decide whether

-4-

an offer should be accepted. Specifically, Williams claims that State Volunteer, despite the opportunity to do so, failed to either settle Johnson's claim against Dr. Soeller for an amount within the Policy's limits or to seek Williams' consent to settle the claim. Williams argues that, had she been given the opportunity to consent to the settlement, she would have done so and demanded that State Volunteer settle the claims against Dr. Soeller in an amount within the limits of the policy. Williams allegations are deficient as a matter of law in at least two important and dispositive respects.

First, the Policy only obligated State Volunteer to seek the consent of "the insured." Williams was not "the insured" under the Policy, and State Volunteer therefore had no obligation to seek her consent. Williams argues that, upon commencement of Dr. Soeller's bankruptcy action, the State Volunteer Policy issued to Dr. Soeller and all rights arising under the Policy became property of the estate. As a result, Williams contends, she stood in the shoes of Dr. Soeller as an insured under the Policy. However, based solely on the language of the Policy, "the insured" is "the named insured" or any other entity specifically contemplated as insured under the policy, such as a corporation solely owned by the named insured. (Doc. 6-1, p.6). The "named insured" is "the person, firm, or corporation designated as such in the declarations." *Id*. In the Declarations of the Policy only Clemens Eugene Soeller MD is listed as the named insured. Therefore, based on strict construction of the language of the Policy, Williams was not "the insured." While claims arising under the contract may pass to the bankruptcy estate, the Court is not convinced that Williams effectively became "the insured" under the Policy upon the Soellers' filing for bankruptcy and Williams being named as Trustee. While the estate does have some *interest* in the Policy, State Volunteer's obligations under the Policy remained always with the named insured - Dr. Soeller. It is also the

named insured who, under the Policy, has a reciprocal duty to cooperate with State Volunteer in the conduct of any suits against the insured. (Doc. 6-1, p. 11). This duty would have fallen to Williams had she effectively become, as she alleges, the named insured under the Policy. It seems unreasonable that a bankruptcy trustee could be expected to fulfill the original duty of a named insured under a medical malpractice insurance policy to "attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses" when it is the named insured who would be best placed to provide such assistance. *Id.* Therefore, it would be contrary to reason, and to the clear language of the Policy, to find that Williams, as bankruptcy trustee of the Soellers' estate, could become "the insured" under the Policy specifically issued to Dr. Soeller. If State Volunteer were to have settled Johnson's claim upon demand by Williams, over any objections by the actual insured, Dr. Soeller, it would have been in breach of the plain language of the Policy. Williams cannot argue that State Volunteer was obligated to breach its own Policy.

Second, under the clear terms of the Policy, State Volunteer was only obligated to seek consent before *accepting* a settlement. Therefore, even if the Court accepted Williams' argument that she should have been treated as the insured under the Policy, State Volunteer did not breach any provision of the Policy in failing to seek her consent as to Johnson's settlement offer. Any decision to decline a settlement offer remained in the sole discretion of State Volunteer to determine if the settlement would be "expedient." The Arkansas Supreme Court has found that "deems expedient" language substantially similar to the language in the Policy in this case does not place upon the insurer any duty to settle a claim. *Dreyfus v. St. Paul Fire & Marine Ins. Co.*, 384 S.W.2d 245, 248 (Ark. 1964). Rather, such language gives the insurer the option of contesting the claim, if it sees fit to do so. *Id.* This conclusion is compelled by a straightforward analysis of the language of the policy.

-6-

The Policy in this case goes on to provide that "no settlement will be made without the insured's consent." (Doc. 6-1, p. 2). The plain meaning of this clause is that the insured has the power, under the Policy, to decline any settlement offers. In other words, the insured can choose to take a risk, which a trial necessarily entails, that he may receive an unfavorable verdict and be held liable for damages beyond policy limits. The Policy does not, however, give the insured the power to demand that State Volunteer accept any settlement offer. In fact, the Policy prohibits the insured from acting unilaterally in settling any claim under the Policy, providing that "[t]he insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense." (Doc. 6-1, p. 11). Even if an insured were to consent to a settlement, the Policy does not obligate State Volunteer to settle. Nor does it obligate State Volunteer to seek consent as to any and all settlement offers. State Volunteer would not need to seek anyone's consent, including the insured's, regarding any offer they intended to decline. Certainly they were not obligated to seek the consent of the trustee of the insured's estate before declining a settlement offer as to a claim against the insured.

Even if State Volunteer had consulted with Dr. Soeller about any alleged settlement offer, and based on such consultation decided that settlement was not expedient, State Volunteer would have no obligation to then seek Williams' consent, even assuming she should have been treated as the insured. The Policy does not outline upon what information State Volunteer should rely in determining expediency, and the opinion of the doctor against whom a claim is brought should reasonably be a part of the calculus. Clauses giving the insured the power to reject a settlement offer are generally included in policies regarding professional liability "in recognition of the fact that settlement of claims may adversely and unjustifiably affect the insured's professional reputation." *Clauson v. New Eng. Ins. Co.*, 83 F. Supp. 2d 278, 281 (D.R.I. 2000). This power of rejection rightly

belonged to the professional whose reputation was at risk – Dr. Soeller – and his opinion could and should have appropriately been considered when determining the expediency of settlement. Furthermore, whether or not State Volunteer was negligent in determining the expediency of settlement is inapposite to Williams' breach of contract claim. The fact remains that, under the plain language of the Policy, State Volunteer did not breach the Policy in not seeking Williams' consent on a settlement offer that, for whatever reason, they ultimately chose to decline. Any negligence or bad faith in failing to settle can be adequately addressed, if appropriate, in a separate tort claim, which Williams has also brought in this case and the Court discusses below.

For all of the above-stated reasons, the Court finds that Williams' Complaint is deficient on its face as to the breach of contract claim, and such claim should be DISMISSED.

## B. Negligent Failure to Settle

Under Arkansas law, "an insuror is liable to its insured for any judgment in excess of the insured's policy limits if the insuror's failure to settle the claim was due to fraud, bad faith or negligence." *Members Mut. Ins. Co. v. Blissett*, 254 Ark. 211 (Ark. 1973). The Court notes initially that, under the law, the insurer's duty is to the insured. As discussed above, the Court has found that Williams was not "the insured" under the Policy at issue. However, assuming that the right to bring a negligent failure to settle claim passed to the bankruptcy estate, Williams' negligent failure to settle claim must be dismissed as her allegations are nothing more than a recitation of the elements for negligent failure to prepare and investigate without any facts to suggest that her claim is plausible. Her claim, therefore, fails the plausibility standard for pleadings as set forth by the Supreme Court in *Twombly*, 550 U.S. 544 and *Iqbal*, 129 S.Ct. 1937. Even accepting as true Williams' allegations that (1) State Volunteer was aware that Johnson sought and received permission from the bankruptcy

court to pursue damages above the Policy limits; (2) a settlement offer was made within the Policy limits, and State Volunteer was aware of the offer; (3) State Volunteer did not accept the offer or seek Williams' consent; (4) State Volunteer knew or should have known that Dr. Soeller's liability to Johnson was clear and that the damages sustained were in excess of Policy limits; and (5) State Volunteer knew or should have known that a trial on Johnson's claims would result in an excess judgment, the Court cannot find that Williams has alleged a plausible claim for negligent failure to settle. A negligence/bad faith failure to settle claim "cannot be based upon good faith denial, offers to compromise a claim or for other honest errors of judgment by the insurer." *Aetna Cas. & Surety Co. v. Broadway Arms Corp.*, 281 Ark. 128 (Ark. 1983). Williams has not alleged facts which would indicate that any settlement decision by State Volunteer was made negligently or in bad faith as opposed to being made after conducting a good-faith assessment of the case, especially when considering Dr. Soeller's interests in defending the case against him and any desire he may have had to avoid potential reputational harm resulting from a medical malpractice settlement. Williams' claims do not contain sufficient factual information, beyond mere "labels and conclusions" that would demonstrate "more than a sheer possibility that [State Volunteer] has acted unlawfully." *Iqbal*, 129 S.Ct. at 1949.

Specifically addressing any potential claim for bad faith, under Arkansas law, "[i]n order to state a claim for bad faith, one must allege that the defendant insurance company engaged in affirmative misconduct that was dishonest, malicious, or oppressive." *Unum Life Ins. Co. of Am. v. Edwards*, 362 Ark. 624, 628 (Ark. 2005). Williams argues that it is State Volunteer's failure to either seek Williams' agreement or to otherwise agree to settlement which gives rise to Williams' negligent/bad faith failure to settle claim. As already discussed above, State Volunteer was not

obligated under the Policy to seek Williams' consent or to otherwise settle the claim. Thus, any such action or omission to act on State Volunteer's part cannot be the basis for a bad faith failure to settle claim in this case.

Furthermore, Williams' argument that the large amount of the ultimate judgment against Dr. Soeller is evidence that State Volunteer acted negligently is untenable. If the Court were to allow the case to advance based on such purported evidence, insurance companies would be exposed to claims in any case in which the jury returned a verdict in excess of policy limits, regardless of any consideration of the reasonableness of their decision not to settle. Williams may argue that, in hindsight, State Volunteer exercised poor judgment in declining to settle the claim. Bad judgment, however, cannot be equated with negligence. *Tri-State Ins. Co. v. Busby*, 251 Ark. 568, 570 (Ark. 1971). Williams' Complaint does not otherwise state facts sufficient to constitute a tort claim against State Volunteer. As such, and for all the reasons set forth above, Williams' claim for negligent or bad faith failure to settle should be DISMISSED. As the Court decides this issue on the above-state grounds, the Court will not address the parties' remaining arguments concerning the appropriateness of dismissal on other grounds.

## III. Motion to Amend Complaint

Williams' proposed amendments to her Complaint would not cure the fatal defects outlined above. As such, the Court finds that Williams' Motion to Amend Complaint should be DENIED as futile. *See Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 225 (8th Cir. 1994) ("Good reason to deny leave to amend exists if the amendment would be futile.").

## IV. Conclusion

For all the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant's Motion

to Dismiss (Doc. 5) is **GRANTED**, and Plaintiff's Complaint is **DISMISSED** for failure to state a claim.

 **IT IS FURTHER ORDERED** that Plaintiff's Motion to Amend Complaint (Doc. 16) is **DENIED** as futile.


 IT IS SO ORDERED this 28th day of September 2011.


    */s/ P. K. Holmes,* III
    P.K. HOLMES, III
    UNITED STATES DISTRICT JUDGE